# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DEMETRIUS COOPER,**

    **Plaintiff,**

  **v.**                                        Case No. 22-cv-084

**SGT. RICHARD MATTI,**

    **Defendant.**

## ORDER

Plaintiff Demetrius Cooper, who is representing himself and currently confined at Waupun Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Cooper was allowed to proceed on an Eighth Amendment excessive force claim against Sgt. Richard Matti for allegedly spraying Cooper with OC spray for no reason. The parties filed cross motions for summary judgment. (ECF No. 33, 43.) The motions are fully briefed and ready for a decision. The parties have consented to magistrate judge jurisdiction. (ECF Nos. 6, 15.) For the reasons stated below, the court denies both motions for summary judgment.

## FACTS

*Cooper's Version of Events*

On September 15, 2019, Cooper, who was housed in Delta Unit of the Wisconsin Secure Program Facility (WSPF), at approximately 6:30 p.m., was in the

day room talking with his fiancé and kids on the phone. (ECF No. 49, ¶ 14.) Cooper states that the conversation was pleasant and put him a great mood. (*Id.*, ¶¶ 15-17.) At approximately 7:15 p.m., once Cooper was done on the phone, he walked to the sergeant's desk, which is protected by a steel cage, in order to request that he be taken back to segregation. (*Id.*, ¶ 18.) Cooper asserts that he wanted to be taken back to segregation because of his history with defendant Matti, who was a sergeant on Delta Unit. (*Id.*, ¶ 8.) Specifically, Cooper alleges that in the past when he was housed on Delta Unit, Matti would call him racial slurs. (*Id.*) In August 2019, when Cooper arrived on Delta Unit after being released from segregation, Matti again began calling him racial slurs. (*Id.*, ¶¶ 6-9.) Cooper would "rather be sent back to segregation" than deal with Matti because after he was released from segregation, he would have an opportunity to be housed on a different unit. (*Id.*, ¶ 9.)

When Cooper approached the sergeant's cage, Matti was on the phone and asked Cooper to wait while he ended the call. (ECF No. 49, ¶¶ 20-21.) Cooper asserts that Matti said into the phone that he'd "call them back because he has a nigger standing at his case and he's going to teach him a lesson." (*Id.*, ¶ 21.) While waiting for Matti to end his call, Cooper paced back and forth. (*Id.*, ¶ 22.) When Matti ended the call, he addressed Cooper stating, "why do I have a nigger standing at my desk?" (*Id.*) Cooper informed Matti that he wanted him to contact a supervisor to take him to segregation. (*Id.*, ¶ 23.) Matti allegedly responded, "stand your black ass right here (next to the sergeant's cage) while I call a supervisor." (*Id.*, ¶ 24.) At that point, three other officers, non-defendants, walked up asking Cooper why he wanted to go to

2

segregation. (*Id.*) Cooper told those officers that he wanted to go to segregation because he was tired of Matti's racial slurs, and the officers allegedly responded that he should not go to segregation because "things may change soon." (*Id.*, ¶ 25.) Cooper interpreted this as a reference to the fact that Matti was soon retiring. (*Id.*)

At that point, Matti "began yelling at the top of his lungs stating, 'this is exactly why I hate you fucking niggers, you fucking niggers should've went back to Africa when we released you from your chains. You niggers seem to think everything is suppose to go your way. I'll give you what your black ass deserve." (*Id.*, ¶ 26; ECF No. 46, ¶ 13; ECF No. 47, ¶ 7.) One of the non-defendant officers, Officer Nagel, then approached the sergeant's cage to give something to Matti. (ECF No. 49, ¶ 28.) Matti then pointed a can of OC spray at Cooper's face. (*Id.*) Cooper moved to the side to avoid the OC spray and then Matti began spraying. (*Id.*, ¶ 30.) Cooper states at no point was he ordered to go to his cell. (*Id.*, ¶ 27.)

After he was sprayed, Cooper went into the cell directly across from the sergeant's cage, and Matti allegedly yelled, "come out of there you fucking nigger so you can get some more, it ain't burning good enough yet." (ECF No. 49, ¶ 40.) Several other officers then came to Delta unit, secured Cooper, and took him to segregation. (*Id.*, ¶ 41.) Cooper maintains that he was calm during his interaction with Matti, and he did nothing to provoke the use of OC spray. (*Id.*, ¶ 49.)

3

*Matti's Version of Events*

On September 15, 2019, while he was stationed at the sergeant's desk on Delta Unit, at approximately 6:45 p.m., Matti noticed that "Cooper was pacing and animatedly gesturing with his hands in the dayroom while he was talking on the telephone." (ECF No. 42, ¶ 6.) At 7:15 p.m., the time for prisoner phone calls ended, so all prisoners were directed to return to their cells. (*Id.*, ¶ 7.) Matti saw Cooper bypass his cell and approach the sergeant's cage. (*Id.*, ¶ 8.) According to Matti, Cooper stated, "I ain't locking in." (*Id.*, ¶ 10.) Cooper then began "to pace in front of the Sergeant's Station in a highly agitated state." (*Id.*, ¶ 11.) Matti then told Cooper to lock into his cell, to which Cooper responded, "I fucking told you I ain't locking in bitch." (*Id.*, ¶ 12.) Next, Matti called the control center and requested support staff and a supervisor to assist him. (*Id.*, ¶ 13.) Matti ordered Cooper to face the wall so he could be restrained, but Cooper refused. (*Id.*, ¶ 14.) Officer Nagel then began to approach Cooper with two other officers behind her. (*Id.*) Cooper took a step towards Nagel, and that is when Matti sprayed him with the OC spray. (*Id.*, ¶ 15.) Matti states that he needed to spray Cooper because the combination of his agitated state and his refusal to follow orders created a risk that Cooper was going to physically harm Nagel and the other officers. (*Id.*) Cooper then went into the cell directly across from the sergeant's cage where he remained until he was restrained and escorted to segregation. (*Id.*, ¶¶ 16-17.)

*Video Evidence*

There is video of Cooper's and Matti's encounter, but the video contains no audio. (ECF No. 37-1.) The video shows Cooper approaching the sergeant's cage and then pacing. Cooper appears impatient but not highly agitated. At one point, Cooper begins leaning near the cage. Cooper and Matti appear to be talking. A woman comes near the cage and also appears to be talking to Cooper. Cooper makes a slight movement to the side and then OC spray emits from the sergeant's cage. (*Id.* 0:00-2:12.)

**SUMMARY JUDGMENT STANDARD**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a

5

reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

*Cooper's Eighth Amendment Claim*

Cooper claims that Matti used excessive force on him in violation of his Eighth Amendment rights. "Correctional officers violate the Eighth Amendment when they use force 'maliciously and sadistically for the very purpose of causing harm,' but not when they apply it in good faith to maintain or restore discipline." *Jackson v. Angus*, 808 Fed. Appx. 378, 382 (7th Cir. 2020). "Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009).

There is a genuine issue of material fact as to whether Matti used excessive force on Cooper when he sprayed him with the OC spray. Cooper and Matti tell vastly different stories—both of which are properly supported by affidavits and other

6

evidence. Cooper states that he was calm and that Matti was agitated whereas Matti states the opposite. The video is inconclusive and, viewing the video in a light most favorable to Cooper, a trier of fact could reasonably conclude that Matti sprayed Cooper with OC spray without provocation. Cooper appears reasonably calm in the video albeit impatient as if he is waiting to talk to Matti. Because the video does not have audio, the court has no way of knowing whether Matti met Cooper with a barrage of racial insults and slurs or whether Cooper was being disrespectful and disobeying orders. Also, the video does not conclusively show that Cooper made threatening movements towards Nagel and the other non-defendant officers. A reasonable jury, then, could conclude that he was merely stepping out of the way to avoid the OC spray and not attempting to attack Nagel and the other officers.

*Qualified Immunity*

Matti argues that even if there is a question of material fact, the court should nevertheless grant summary judgment in his favor because he is entitled to qualified immunity for claims brought under 42 U.S.C. § 1983. To determine whether qualified immunity applies, the court must consider "(1) whether the defendants violated a constitutional right, and (2) whether the constitutional right was clearly established." *Broadfield v. McGrath*, 737 Fed. Appx. 773, 775 (7th Cir. 2018).

As discussed above, the court has already found that a reasonable jury could conclude that Matti violated Cooper's Eighth Amendment rights when he sprayed him with the OC spray. The only question remaining is whether, operating under the law as it existed in September 2019, a reasonable officer would have known that

7

spraying Cooper with OC spray in this instance constituted excessive force under the Eighth Amendment. Matti argues that there is not "clearly established case law that it was unconstitutional for Matti to deploy a single burst of OC spray after Cooper refused direct orders while displaying behavior indicating that he was about to be physically violent to officers." (ECF No. 34 at 10.)

The court, notes, however that there is a question of material fact as to whether Cooper was threatening and agitated and that a reasonable factfinder could conclude that Matti sprayed Cooper unprovoked. At the time, it was well established that spraying a prisoner with OC spray under Cooper's version of events was a constitutional violation. *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (holding that "it is a violation for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain.") As such, Matti is not entitled to qualified immunity on the Eighth Amendment excessive force claim.

## CONCLUSION

Because there is a genuine issue of material fact as to whether Matti used excessive force on Cooper when he sprayed him with OC spray, the court denies the parties' motions for summary judgment. The court will set a scheduling conference at a later date to discuss next steps.

8

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Matti's motion for summary judgment (ECF No. 33) is **DENIED**.

**IT IS FURTHER ORDERED** that Cooper's motion for summary judgment (ECF No. 43) is **DENIED**.

The court will set a scheduling conference to discuss next steps.

Dated in Milwaukee, Wisconsin this 8th day of August, 2023.

STEPHEN DRIES
United States Magistrate Judge